# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| **Johnny M White** | : | **Case No.1:06CV02208 (1:02CR382)** |
| **Plaintiff,** | : | |
| | : | **JUDGE KATHLEEN O'MALLEY** |
| **v.** | : | |
| **United States of America** | : | **MEMORANDUM & ORDER** |
| **Defendant.** | : | |

## I. INTRODUCTION

Before the Court is Johnny M. White's petition for a writ of habeas corpus.  (Doc. 1.)  For the following reasons, this petition is **DENIED**.

## II. BACKGROUND

On August 11, 2003, Mr. White plead guilty to two felony counts of being a felon in possession of a firearm.  As part of his plea agreement, Petitioner preserved his right to appeal this Court's denial of a motion to dismiss the Government's case.  Mr. White had moved for dismissal on multiple grounds, but for purposes of evaluating this petition, it is only important to note that Mr. White alleged that his rights were violated under the Speedy Trial Act ("Act").  This Court denied Mr. White's motion to dismiss and the Sixth Circuit upheld that ruling.  *See United States v. White*, 129 Fed. Appx. 197, 198 (6th Cir. 2005).  After Mr. White's conviction became final, however, the Supreme Court issued an opinion clarifying the Act.  *Zedner v. United States*, 547 U.S. 489 (2006). Mr. White now contends that *Zedner* mandates a different result from the one originally reached by

this Court and the Sixth Circuit.  (Doc. 1.)[1]

Under the Act, a defendant's trial must commence within 70 days of his indictment or first appearance in court, whichever is later.  18 U.S.C. § 3161(c)(1).  Certain periods of time, however, do not count towards this 70-day limit.  18 U.S.C. § 3161(h).  The Act provides that a district court may continue a defendant's trial if the "ends of justice" outweigh the defendant's right to, and the public's interest in, a speedy trial.  *United States v. Gardner*, 488 F.3d 700, 719 (6th Cir. 2007).  The Sixth Circuit has explained that the "ends of justice" provision:

> permits a district court to grant a continuance that excludes from the speedy-trial clock the resulting delay when the court makes findings that the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial, and sets forth, in the record of the case, either orally or in writing, its reasons for these findings.  These findings must be put on the record by the time a district court rules on a defendant's motion to dismiss.

*United States v. Jordan*, 2008 U.S. App. LEXIS 21572, at *15-17 (6th Cir. Sept. 16, 2008) (citations omitted) (quotations omitted).  A district court may properly grant such an "ends of justice" continuance under several circumstances.  For example, a court may grant an "ends of justice" continuance to allow a defendant additional time to fully prepare for trial, so long as the amount of time requested by that defendant is not excessive in light of the particular facts and circumstances of the case.  *See Gardner*, 488 F.3d at 719.  An "ends of justice" continuance, however, is not proper merely because the defendant requests additional time to prepare.  *See Zedner*, 547 U.S. at 504.  Indeed, a defendant may bring a successful challenge under the Act against a continuance that the

---

[1] During briefing, the parties focused on whether *Zedner* is a new procedural rule and, consequently, not retroactive.  The Government eventually conceded this point to Mr. White. (*See* Doc. 9 at 2.)  During oral argument, however, the Government asserted that *Zedner* might not apply retroactively on collateral attack, even though it is not a new procedural rule.  (*See* Doc. 14 at 31.)  Because neither party briefed this issue and because the issue is not outcome determinative, this Court will assume, without deciding, that *Zedner* applies retroactively on collateral attack.

defendant himself requested.  *Id*.  Such is the situation before this Court today.

Mr. White alleges that his rights under the Act were violated when the Court postponed Mr. White's trial in response to his request for new counsel shortly prior to his original trial date.[2]  First, Mr. White notes that a defendant can never waive his rights under the Act.  He argues that, because this Court stated that he "waived" his rights, the Court could not have properly granted an "ends of justice" continuance as required by the Act.[3]  Second, Petitioner argues that, even if it is theoretically

---

[2] Petitioner actually refers to two different events as having been improperly excluded from the 70-day time limit contemplated by the Act.  He challenges both the delay referenced throughout this opinion (the relevant portion of which is 54-days long) as well as a separate 24-day period.  This Court will not reach the claim regarding the 24-day period, because that time-period cannot impact the outcome of this petition.  Even assuming that the 24-day period should not have been excluded, Mr. White's trial still took place within the 70 day time limit contemplated by the Act unless the 54-day delay was also improper.  *White*, 129 Fed. Appx. at 202; (*see also* Doc. 1 at 10 (referring to 54-days as the relevant period of time for this Court to consider).  The converse is also true, if the 54-day period has been improperly excluded, Mr. White's rights under the Act were violated even if the 24-day period had been properly excluded.

[3] Mr. White references an 8-page on the record exchange during his request for a continuance.  The most relevant portions of this exchange are below:

**Mr. White**:  I'm really not feeling that [counsel] is actually representing me in a manner that I feel confident in.  I mean, I just  have issues that I don't feel I am being represented to the fullest of her ability. . . . I don't feel – I don't feel that I'm being represented.

...

**Counsel for Mr. White**: I can affirm to [this Court] that [Mr. White's] dissatisfaction [with my performance] is [very] high – this might be a better time to consider appointing [new] counsel rather than waiting until later....

**The Court**: Well, sir, do you understand that if you ask for substitute counsel at this point, that any new lawyer that comes into this case will [be unwilling to try it without time to prepare]. . . . [W]hat lawyer is going to want to try a case in a week?

**Mr. White**: Honestly, I don't know that [current counsel] was prepared to try this case in a week.  That's just my feelings.

**The Court**: [T]hat's not the point I was asking you.  Do you understand that if you asked for a

possible for some court to comply with the Act notwithstanding the use of the word "waiver," this Court did not do so.  In particular, he argues that the Court was "concerned with finding a date that would conveniently fit into the schedules of counsel for both sides and the court, not with evaluating

---

new lawyer, that  there is going to [have to be] a continuance of  the trial?

**Mr. White**: Yes, I understand that.

**The Court**: And that means that your request would effectively waive any right you would have to contend that the trial should occur [in one week] as it is currently scheduled.

**Mr. White**: Yes, I do.

**The Court:** And do you understand that if  you ask for new counsel and there is a continuance, that there is a high probability that you are going to sit in custody the whole time?

**Mr. White**: Yeah, I believe that.  I'm aware of that.

**The Court**: I would be surprised if the legal opinions of any other counsel would be different than [current counsel] who has gone out of her way to aggressively represent you in this case. . . . [But] I will appoint new counsel.  We will have to discuss with new counsel and Ms. Kelly what a convenient time for trial would be, so we will have a telephone conference call with whoever the new counsel is and with Ms. Kelly to pick a trial date.  The trial date is going to have to depend  on your counsel's schedule –

**Mr. White**: I understand.

**The Court**: -- on the Government's schedule and my schedule.

**Mr. White**: I understand, your honor....

...

**The Court**: At your request, I will appoint new counsel and there will be a continuance.  I can't tell you how long it will be.  It may be quite a while to get our schedules to mesh so it is convenient for everyone to be together and get your counsel up to speed.  Do you understand that?

**Mr. White**: I understand that.

(Doc. 1 Ex. 3.)

the ends-of-justice factors." *United States v. Henry*, 538 F.3d 300, 305 (4th Cir. 2008).

The Government opposes Mr. White's petition, primarily on the basis that the Sixth Circuit ruled on the very issues now before the Court during Mr. White's direct appeal. The Government also contends that Mr. White did not preserve his right to collateral attack when he entered his guilty plea. As discussed more fully below, both of these arguments are meritorious.[4]

## III. ANALYSIS

### A.      Standard of Review

A petitioner who moves to vacate, set aside or correct a sentence pursuant to 28 U.S.C. § 2255 must demonstrate that: (1) the sentence was imposed in violation of the Constitution or laws of the United States; (2) the court was without jurisdiction to impose the sentence; (3) the sentence

---

[4] The Government does make three arguments that are not well-taken. First, the Government suggests that Mr. White did not preserve the issues raised in *Zedner* with enough specificity during his direct appeal. The Court finds this contention without merit. *See White* 129 Fed. Appx. at 201-02 (considering the very issues now raised in this petition.)

Second, the Government argues that Mr. White should not be able to challenge the very continuance he himself requested. While this argument has considerable force of logic outside the context of the Act, estoppel does not apply here. *Zedner*, 547 U.S. at 505-06. Estoppel would, however, likely prevent Mr. White from now arguing that his lawyer did not need some period of time to prepare for trial. *See id.* The distinction is that a petitioner may assert that a court violated the Act when it granted a continuance the petitioner himself requested, but a petitioner may not assert that the reasons he offered to a court in support of his continuance are now invalid. *Id.*

Last, the Government asserts that a §2255 petition cannot reach non-constitutional errors. (Doc. 14 at 33.) In support of this contention, the Government cites *Reed v. Farley*, 512 U.S. 339, 355 (1994) and *Grant v. United States*, 72 F.3d 503, 505 (6th Cir. 1996). These are inapposite citations, because *Reed* and *Grant* refer to the review of procedurally defaulted claims. Indeed, Justice Scalia concurred in *Reed* to take issue with the plurality's focus on procedural default, rather than the source of the asserted right. *See Reed,* 512 U.S. at 357 (Scalia, J., concurring). After considering *Reed, Grant,* and the text of §2255, which notes that a petitioner may challenge imprisonment in violation of the "Constitution or laws" of the United States, this Court will presume that statutory violations are ordinarily cognizable under §2255 when the relevant claims have not been procedurally defaulted. *Cf. Rivera v. Warden*, 27 Fed. Appx. 511, 515 (6th Cir. 2001) ("non-constitutional errors . . . will rarely, if ever, warrant relief from the consequences of [procedural default.]").

was in excess of the maximum authorized by law; or (4) the sentence is otherwise subject to collateral attack.  28 U.S.C. § 2255.

A petitioner seeking relief under § 2255 must allege that: (1) his conviction resulted from an error of constitutional magnitude; (2) his sentence was imposed outside the statutory limits; or (3) an error of fact or law occurred that was so fundamental as to render the entire proceedings invalid. *Pough v. United States*, 442 F. 3d 959, 964 (6th Cir. 2006).  The petitioner has the burden of sustaining his allegations by a preponderance of the evidence.  *Id.* at 964.  *See also McQueen v. United States*, 58 Fed. Appx. 73, 76 (6th Cir. 2003) ("Defendants seeking to set aside their sentences pursuant to 28 U.S.C. § 2255 have the burden of sustaining their contentions by a preponderance of the evidence.") (citation omitted).

**B. Mr. White's Substantive Rights Under the Speedy Trial Act**

The Court's analysis must begin with the simple fact that the Sixth Circuit has already considered the very arguments contained in the petition now before this Court.  *See White*, 129 Fed. Appx. at 201-02.  In *White*, the Sixth Circuit stated: (1) that even when a district court uses the language of "waiver," it is still appropriate to evaluate a claim under the Act to determine if it is a proper "ends of justice" continuance and; (2) that this Court granted Mr. White a proper "ends of justice" continuance.  *Id*.  Therefore, Mr. White can only prevail if he can show that *Zedner* should alter the Sixth Circuit's initial conclusions.

**1. Whether the Court's Initial Ruling That Petitioner "Waived" His Rights Precludes the Possibility of Compliance with the Act.**

The first issue before this Court is whether its initial order that Petitioner waived his rights can be evaluated as a request for continuance.  Mr. White accurately notes that one cannot prospectively waive their rights under the Act.  *See White*, 129 Fed. Appx. at 201.  Petitioner is also

-6-

correct when he notes that this Court initially referred to Mr. White as "indefinitely waive[ing] his right to speedy trial after a substantial in-court colloquy with the Court." *White*, 129 Fed. Appx. at 201.[5]  The Sixth Circuit, however, noted that the Act allows defendants to request a continuance and treated Mr. White's "waiver" as such a request. *Id*.

Mr. White now contends that *Zedner* mandates a different result by offering the remarkable assertion that *Zedner* "held that 'ends-of-justice' continuances cannot be implied." (Doc. 1 at 16) (emphasis added). *Zedner* contains no such holding. Furthermore, while it is true that, as Petitioner claims, *Zedner* generally refers to the need for "procedural strictness" under the Act, this is in reference to the requirement of on the record findings regarding an "ends of justice" continuance, not to the language that a court must employ when making those findings. *See Zedner v. United States*, 547 U.S. at 509. *Zedner* does, of course, hold that a defendant may not prospectively waive the application of the Act, but this is precisely where the Sixth Circuit began its analysis of the Petitioner's direct appeal. *White*, 129 Fed. Appx. at 201.

This Court does not believe that anything in *Zedner* would alter the Sixth Circuit's conclusion that a "waiver" may be evaluated as an "ends of justice" continuance. Indeed, *Zedner* supports the Sixth Circuit's original result. In *Zedner*, after rejecting the Government's estopple argument, the Court specifically considered whether there were any on the record findings that would have supported a request for a continuance. *Zedner*, 547 U.S. at 507. It is therefore clear that, as the Sixth Circuit found in *White*, a district court may properly grant a request for continuance under the Act, notwithstanding the use of the word "waiver" in connection with granting that request. *See also*

---

[5] When the Court used the word "indefinite," it was referring to the fact that the precise length of delay was unknown at the time Mr. White requested his continuance. It did not, of course, mean that the delay could last for any amount of time whatsoever. (Doc. 14 at 37.)

-7-

*United States v. Williams*, 511 F.3d 1044, 1056 (10th Cir. 2007) ("[A] district court need not necessarily expressly conduct a balancing or use particular language, so long as the court gives some indication of balancing contemporaneous with the grant of the continuance.") (citations omitted); *United States v. Rodriguez*, 457 F.3d 109, 116 (1st Cir. 2006) (noting that although the district court had actually cited "a non-existent provision of the [Act]," that court had conducted an appropriate on the record balancing under *Zedner*).

### 2. Whether There Were Sufficient on the Record Findings to Support the District Court's Ruling

Under the Act, a district court may grant an "ends of justice" continuance so long as the continuance is reasonable in scope and there are sufficient on the record findings to support a court's ruling. *See Gardner*, 488 F.3d at 719; White, 129 Fed. Appx. at 201-02.  In the instant case, the Sixth Circuit has already found that this Court made such an on the record finding. *White*, 129 Fed. Appx. at 201-02 ("[T]he district court explained that a continuance would be necessary to allow for new counsel to prepare for trial.  This is sufficient justification under the statute.").  Mr. White does not argue that *Zedner* implies a higher standard for on the record findings than was initially employed by the Sixth Circuit. (See Doc. 14 at 12.)[6]  Rather, the Petitioner attempts to reargue the Sixth Circuit's conclusion that this Court's contemporaneous findings were specific enough to comply with the Act.  (*See* Doc. 1 at 17; Doc. 14 at 12-13.)  Petitioner's claim is not well-taken.

----

[6] Nothing in *Zedner* expressly increases the level of specificity needed for valid on the record findings under the Act.  Rather, *Zedner* simply refers to the need for findings generally. *Zedner*, 547 U.S. at 507 ("[F]indings must be put on the record by the time a district court rules on a defendant's motion to dismiss. . . . [This requirement cannot be satisfied] by passing reference to the case's complexity.").  It does not appear that any court treats *Zedner* as imposing some higher level of specificity than was employed in *White*, in which the Sixth Circuit looked to see whether this Court had provided "a clear articulation of the reasons that support an ends-of-justice continuance." *White*, 129 Fed. Appx. at 201.

The Petitioner attempts to argue that this Court was concerned only with scheduling, rather than with the "ends of justice" factors. Were this true, of course, Mr. White would have prevailed on direct appeal. *See Henry*, 538 F.3d at 305. Scheduling considerations, of course, are not an appropriate ground on which to grant a continuance under the Act. *Id*. This does not mean, however, that, should a court properly grant an "ends of justice" continuance, scheduling considerations may not factor into a determination of the precise date for trial. In Petitioner's case, a continuance was in furtherance of the "ends of justice" because Mr. White's interest in having well-prepared counsel with whom he did not have irreconcilable conflicts outweighed his right to and the public's interest in a speedy trial. *White*, 129 Fed. Appx. at 201. Having determined that a continuance was warranted in order to grant White's desire for new counsel and then allow that new counsel to prepare for trial, this Court needed to schedule the new trial for a date and time when the new counsel could actually attend it.

In sum, the Sixth Circuit has already determined that this Court made sufficiently clear on the record findings to comply with the Act. Mr. White presents no compelling reason why this Court should consider that finding in error.

## B. Mr. White's Right to Bring This Claim on Collateral Attack

Even if Petitioner's substantive rights under the Act had been violated, Mr. White still would not prevail because he waived his right to pursue this claim on collateral attack. Mr. White's plea agreement said, in relevant part:

> Defendant acknowledges having been advised by counsel of Defendant's rights … to appeal the conviction or sentence… **and to challenge the conviction or sentence collaterally**. . . . **Defendant expressly waives those rights except as reserved below. Defendant reserves the right to appeal** … the denial of his motion to suppress and motion to dismiss. Nothing in this paragraph shall act as a bar to the defendant perfecting any legal remedies he may otherwise have on appeal or

collateral attack respecting claims of ineffective assistance of counsel or prosecutorial misconduct.

(No. 1:02CR382 Doc. 99) (emphasis added). Mr. White does not contest the validity of the waiver, rather, he contests its scope. (Doc 14 at 9-10.) In particular, Petitioner argues that when he stated that he "reserves the right to appeal . . . the denial of his motion," he reserved both his rights of direct appeal and collateral attack. (*Id.* at 6.)

A plain reading of this plea agreement compels the opposite conclusion. While the defendant preserved his right to the direct appeal of the motion to dismiss, he did not preserve his right to collateral attack. The plea agreement specifically acknowledges that the Defendant was advised of both his right to appeal and his right to challenge his conviction collaterally. He expressly waived all rights except his right to "appeal" certain aspects of his sentence. Petitioner's observation that ambiguities are construed against the Government is of no moment, because this agreement is not ambiguous.[7]

## IV. CONCLUSION

To bring a successful habeas petition before this Court, Mr. White was in the difficult position of having to prove both that his substantive rights were violated and that he was

---

[7] Petitioner also argues that there is one instance when the Government spoke of direct appeal and collateral attack as one right. (Doc 14 at 8-9.) During Defendant's plea colloquy, the Government stated that "the agreement also sets forth waiver of appeal and collateral attack rights except for those mentioned by the Court, that is, the denial of the motion to suppress and the motion to dismiss." (*Id*.) Standing only with petitioner's affidavit (discussed below), however, this one spoken sentence does not modify an unambiguous written agreement.

Petitioner's self-serving affidavit that he thought he was preserving his right to collateral attack is equally unconvincing. Even if this affidavit is to be taken at face value, Petitioner himself notes that it is his <u>reasonable</u> beliefs that control. (Doc. 7 at 4.) It would not have been reasonable to read an agreement that expressly separates "appeal" from "collateral attack" and believe that one was reserving the right to the later by referring only to the former.

-10-

procedurally entitled to bring this claim.  For the aforementioned reasons, the Petitioner was unable to successfully assert either.  Accordingly, his motion for a writ of habeas corpus is **<u>DENIED</u>** and this action is **<u>DISMISSED</u>**.  The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that an appeal from this decision could not be taken in good faith.  Further, the Court will not issue a certificate of appealability in this case because Mr. White has not "made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).

**IT IS SO ORDERED.**

s/Kathleen M. O'Malley  
**KATHLEEN McDONALD O'MALLEY**  
**UNITED STATES DISTRICT JUDGE**

**Dated: October 24, 2008**